**UNITED STATES of America, Appellee,**

v.

**James Lee TAYLOR, Appellant.**

**No. 78–1724.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1979.

Decided April 18, 1979.

Rehearing Denied May 15, 1979.

---

834

James J. Knappenberger of Shaw, Howlett & Schwartz, Clayton, Mo., for appellant.

Mark A. Helfers, Asst. U. S. Atty. (argued), and Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and SCHATZ,* District Judge.

SCHATZ, District Judge.

This is an appeal from a criminal conviction on eleven counts of firearms violations. The appellant, James Lee Taylor, was indicted and convicted of the following: in Counts I, III and XI of knowingly possessing unregistered firearms in violation of 26 U.S.C. § 5861(d) and § 5871; in Counts II and IV of knowingly transferring unregistered firearms in violation of 26 U.S.C. § 5861(e) and § 5871; in Count V of conspiracy to deal in firearms without a license, in violation of 18 U.S.C. § 371, § 922(a)(1) and 26 U.S.C. § 5861(e); in Count VI of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1) and § 924(a); and in Counts VII, VIII, IX and X of knowingly receiving firearms while under indictment for burglary in violation of 18 U.S.C. § 922(h)(1) and § 924(a).

The appellant was sentenced to a period of six years in each of Counts I, II, III, IV and XI and for five years in each of Counts

* Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

V, VI, VII, VIII and IX, all sentences to run concurrently with each other; on Count X the defendant's sentence was suspended and he was placed on probation for a period of five years to commence on completion of the terms of imprisonment.

The existence of the firearms transactions in question here first surfaced when one Douglas Gilmore, a reserve deputy sheriff, Poplar Bluffs, Missouri, who was also a licensed firearms dealer, heard a rumor that one Clifford Worley had access to a machine gun. After arranging to inspect the gun, Gilmore contacted agents of the Bureau of Alcohol, Tobacco and Firearms (hereinafter ATF), Victor Herbert, Roger Moen and Jim Bowen. Agent Herbert accompanied Deputy Gilmore to meet Worley in the parking lot of a shopping center in Poplar Bluffs. Herbert purchased a thirty caliber carbine machine gun with an attached M–2 conversion kit for $350. At that time, Herbert asked Worley if he had any other firearms for sale but Worley indicated that he had a partner with whom he had to consult before arranging any further sales. The receiving and transfer of this firearm forms the basis for Counts I and III of the indictment.

On June 29, Gilmore and Herbert again met with Worley in order to purchase additional firearms. Worley requested that they drop him off at 1728 Seiferts Drive (hereinafter 1728) indicating that he would meet them later on in Bacon Park with the weapon. When Herbert and Worley arrived at that address a green Baracuda automobile was parked in the driveway. Several agents surveilled the area around 1728 and the area around Bacon Park during the time of the transaction. One agent, Dennis Becker, who was seated in an automobile nearby, saw Worley approach the house but did not see him enter the house. Some minutes later Becker saw the green Baracuda on the road and had an opportunity to look at the driver, who was later identified as James Taylor. ATF agents also surveilled the area from a helicopter. Though the entrance to the house was somewhat obscured from view, the agents did see two men appear at the side of the house and get into the green Baracuda. One man was carrying a package. The Baracuda stopped at Bacon Park and Worley alighted from the car carrying a package. Worley sold three guns to agent Herbert: a Llama 9 millimeter semi-automatic pistol; a Star, model PD .45 caliber semi-automatic pistol and a Sterling, model 400, .380 caliber semi-automatic pistol. Herbert paid $270 for all three guns. It was later determined that these weapons had been stolen from the 303 Package Liquor and Sporting Goods Store. The sale of these weapons forms the basis for Counts V and VI.

On July 13, 1978, Agent Herbert purchased from Worley an Inland Arms M–1 .30 caliber U.S. carbine with an attached M–2 kit for $350. Once again, agents surveilled the transaction. Agent Moen watched Agent Herbert drop off Worley at 1728. Worley walked to the entrance of the house and knocked. The record is silent as to whether Worley entered the house. Worley and another white male were later seen driving off in a green Baracuda. At Bacon Park, Worley got out of the Baracuda carrying a brown paper bag. The Baracuda returned to 1728. The possession and transfer of this firearm forms the basis for Counts II and IV of the indictment.

The ATF agents secured search warrants on July 20, 1978, and searched the house at 1728 Seiferts Drive and the green Baracuda. Immediately after the agents entered the house, Mr. Taylor was read his *Miranda* rights and placed under arrest. Several guns were found inside the house, including a A.M.T. .45 caliber semi-automatic pistol, a .22 caliber Stoeger, Luger model semi-automatic pistol, a .9 millimeter caliber Walther model P–38 semi-automatic pistol, a .22 magnum caliber high standard Derringer, a Japanese 7.7 millimeter type 97 machine gun and a .22 caliber bolt action sawed-off rifle of unknown brand. In addition, the agents found numerous pamphlets and manuals concerning weapons. Following the search of the house, Mr. Taylor was transported to Cape Girardeau, Missouri.

The possession of these weapons forms the basis for Counts VII, VIII, IX, X and XI of the indictment.

At no time during any of the transactions did Clifford Worley refer to his supplier by name. However, Worley did indicate on June 29 that the driver of the green Baracuda was his supplier. As stated in the affidavit for the search warrant:

> During their discussion, Worley told Special Agent Herbert that the three handguns were "very hot." Worley also told Special Agent Herbert that the man that dropped him at the entrance to the park was "his main man," that he was the individual who supplied the "machine guns," that he (Herbert) had previously purchased, that he is the individual that orders parts to make the "machine guns," and that he is probably the "biggest gun dealer" in Poplar Bluff, Missouri.

In this appeal James Taylor asserts that the trial court committed several prejudicial errors, each of which will be discussed in turn.

As his first assignment of error, the appellant challenges the trial court's failure to grant his motion to suppress the evidence obtained pursuant to the search warrant. The trial court, following a hearing on the motion to suppress, denied the motion and evidence was later offered and received during trial over the defendant's objection. The firearms seized comprised the sole and only basis for the convictions under Counts VII, VIII, IX, X and XI.

█  In our view the affidavit in question was defective and fatally so. (The affidavit in its entirety appears as an appendix to this opinion.) There is no question that the affidavit is long and detailed. It meticulously recites many minute and rather obscure facts developed in the investigation of the defendant. At first blush, the affidavit seems to be ample and constitutionally sound to show probable cause that firearms were present inside the house at 1728. However, on close scrutiny, the affidavit bears a fatal flaw. Nowhere in the affidavit is it set forth that the surveilling officer saw Worley on any occasion enter the house

at 1728 or exit the premises. Nowhere in the affidavit is it set forth that the surveilling officers observed the defendant on any occasion either entering or exiting said house. In regard to the surveillance on June 29, 1978, the most that can be said is that the affidavit discloses that "Worley got out of the vehicle (and) he was observed *walking toward* the southwest corner of the residence." (Emphasis supplied.) Some time later, Worley was observed, along with another unknown white male, getting into the green Baracuda parked in the driveway at 1728. Therefore, at that point, it was a conclusion, based on mere suspicion of the surveilling agents, that the house in question contained the firearms. Consequently, the official who issued the warrant relied on that same conclusion.

In regard to the surveillance on July 13, 1978, the most that can be said from the affidavit is that the surveilling agent observed Worley walk *to the entrance of the residence and knock.* From that point on, the affidavit is completely silent as to whether Worley actually entered the residence and silent as to whether he ever exited said house. Following the observation of Worley walking to the entrance of the residence, the affidavit states that Worley and another white male, believed to be James Taylor, were seen riding in the same green Baracuda. Again, we have a conclusion based on mere suspicion that either Worley or the defendant actually entered or exited the house in question.

█  We recognize that the affidavit need only establish the probability of criminal activity and the concealment of evidence on specific premises. Proof beyond a reasonable doubt is not required. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Jones*, 545 F.2d 1112 (8th Cir. 1976). However, it is elementary that the magistrate or other official who issues a search warrant on the basis of an affidavit cannot rely on facts set forth in the affidavit which raise a mere suspicion or conclusion which he equates to a proper finding of probable cause. *Gilles-*

*pie v. United States*, 368 F.2d 1, 4 (8th Cir. 1966). The affidavit here falls short of the standards set forth in *Draper, supra, Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and other Supreme Court decisions focusing on this issue. The affidavit was based and the search warrant was issued on a conclusion supported only by suspicion that the firearms were stashed inside the house at 1728. This unsupported conclusion relied on by the magistrate who issued the search warrant is also relied upon by the government to support a finding of probable cause. In its brief at page 7, the government asserts "that the facts set forth show that on June 29, Worley was observed *entering* 1728 Seiferts Drive without any firearms in his possession. Five minutes later, he *exists* (sic) with a blue package containing three stolen firearms." At page 8, the government brief states "the July 13 incident is basically the same as that of June 29. Worley is seen *going into* the residence without any firearms in his possession. He is seen *exiting* with a package in his possession." (Emphasis in both quotes supplied.) These simply are not the facts and the affidavit in question falls short of supporting these assertions.[1] As the affidavit on its very face discloses, there never was any observation in this case by any agent that Worley or the defendant ever entered or exited the house at 1728 on June 29 or July 13, or at any other time. To allege that probable cause existed to believe that firearms were located in the house at 1728 must of necessity rest on a conclusion or mere suspicion and this the constitution forbids. *Gillespie v. United States, supra*. We cannot employ the means of a judicial derrick to move contraband goods into a given location where, as here, the support rests solely on a conclusion or a suspicion and is not founded on probable cause. As stated in *Spinelli v. United States, supra* at 419, 89 S.Ct. at 590–591:

The affidavit, then, falls short of the standards set forth in *Aguilar, Draper,* and our other decisions that give content to the notion of probable cause. In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). But we cannot sustain this warrant without diluting important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry.

For these reasons, we find the trial court committed prejudicial error in overruling the defendant's motion to suppress the search warrant and the evidence seized thereby and in admitting the same into evidence. We, therefore, dismiss Counts VII, VIII, IX, X and XI and set aside the sentences imposed under said counts.

The appellant has also challenged the sufficiency of the evidence for each count of the conviction. This appellate court in reviewing the sufficiency of the evidence which underlies guilty verdicts by a jury must adhere to several well-established principles. *See United States v. Jackson*, 549 F.2d 517 (8th Cir. 1977). These principles deserve reiteration at this

---

1. A search warrant for the green Baracuda was based on the same affidavit. It appears that this warrant in this case could muster constitutional scrutiny. However, that subject is moot in view of the fact that no items were found in or seized from the Baracuda.

point. First, the court must view the evidence in the light most favorable to the verdict rendered. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Second, the court must accept all reasonable inferences from the evidence which tend to support the jury verdict. *United States v. Overshon*, 494 F.2d 894 (8th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). Third, the evidence need not "exclude every reasonable hypothesis except that of guilt but simply that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Shahane*, 517 F.2d 1173 (8th Cir.), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). Fourth, circumstantial evidence is intrinsically as probative as direct evidence even where the conviction rests solely upon circumstantial evidence. *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976). Finally, the uncorroborated testimony of an accomplice is sufficient to sustain a conviction if it is not otherwise incredible or unsubstantial on its face. *United States v. Abrahamson*, 568 F.2d 604 (8th Cir. 1978).

■ The government's case against Taylor rests to a great extent upon the testimony of Clifford Worley. Worley's testimony delineated the events of each transaction outlined above and established other crucial facts. Worley obtained from James Taylor all of the weapons he offered for sale to the ATF agents: two machine guns and three handguns. Taylor set the price for each of the weapons and after each transaction, Worley turned over all the proceeds to Taylor. Taylor transported Worley to and from the park where Worley sold the weapons. Many details of the sequence of events as related by Worley were corroborated by the agents surveilling the transactions. After careful examination of the entire record, this Court is satisfied that Clifford Worley's testimony alone could support the convictions on Counts I, II, III, IV and VI. The additional corroborating evidence by the surveilling agents only strengthens the case against Taylor.

■ The appellant argues that the evidence did not establish the existence of a conspiracy to deal in firearms without being licensed as stated in Count V of the indictment. A conspiracy consists of an agreement between the conspirators to effect the object of the conspiracy. *United States v. Skillman*, 442 F.2d 542 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). It is not necessary that the government prove the existence of a formal or express agreement. Rather, an agreement can be proven by means of circumstantial evidence. *United States v. Jackson, supra* at 530. It was established that Taylor supplied the weapons for sale and set the price at which Worley sold each weapon. The testimony by Worley, even though uncorroborated, is sufficient to support the finding of a conspiracy in Count V.

■ The appellant argues that the court committed prejudicial error when, on redirect examination, the government was permitted to question Clifford Worley about threats made by the defendant against Worley at the time of Worley's arraignment. Shortly before trial, Worley informed the government's counsel of this threat but no transcription was made of this statement. During redirect examination of Worley by the government, Worley stated that he had spoken with James Taylor at the time of his arraignment. Taylor stated at that time that he wanted to talk with Worley and "try to get together with (him) and work something out." Furthermore, Taylor told Worley not to testify against him, Taylor, and that he, Taylor, would do anything in his power to keep Worley from testifying. Taylor's attorney objected to this line of questioning on the grounds that it was improper redirect examination since the statements had not been aired on either direct or cross-examination. On appeal, the appellant has challenged the admission of this evidence on three grounds: first, that the questions were beyond the scope of direct or cross-examination, and therefore, improper; second, that the statement was not disclosed as

required under the Jencks Act and, therefore, lead to "unfair surprise;" and finally, that the statement was irrelevant and severely prejudiced the jury against the defendant. The government argues that the fact of the threat was raised in response to cross-examination wherein the appellant attempted to establish that Worley could have been supplied with weapons by a man named Doniphan rather than by James Taylor. It was the government's theory that Taylor tried to pressure Worley into not testifying against him. At the start of this line of questioning, the court discussed the merits of this objection with counsel off the record and overruled the objection. It is well established that the scope of redirect examination is within the sound discretion of the trial court, *United States v. Mackey*, 571 F.2d 376, 383 n. 9 (7th Cir. 1978), and will be reversed only upon a showing of abuse of that discretion. *United States v. Hodges*, 480 F.2d 229 (10th Cir. 1973). After reviewing the record, this Court does not find that the court abused its discretion in this regard. The appellant did not object at trial to this examination on the basis of a Jencks Act violation or for reasons of irrelevancy and prejudice. Accordingly, the appellant is precluded from raising those issues here.[2]

■ The appellant also argues that the court committed prejudicial error when it permitted the introduction of certain pamphlets and price lists concerning weapons seized in the search of 1728. This Court has determined that all the evidence seized in that search should have been suppressed. Consequently, the only question is whether James Taylor was prejudiced by the jury's consideration of these materials. First, this Court notes that had these materials not been suppressed, their introduction at trial would have been permissible as relevant and material evidence of the crimes committed. In addition, Worley's testimony and the corroborating evidence introduced at trial supplied sufficient evidence to sustain the convictions against the defendant with or without the additional evidence sup-

plied by these pamphlets and price lists. No prejudice resulted from their introduction.

■ The final assignment of error challenges the constitutionality of 18 U.S.C. § 922(h)(1) and § 924(a) under which the appellant was charged in Counts VII, VIII, IX and X. Even though we need not consider this challenge in its full dimension as a result of the dismissal of these counts, a question remains whether the defendant was prejudiced in his conviction under the other counts by the introduction of evidence on these counts.

Under these provisions, it is illegal for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to receive any firearms or ammunition which have been shipped or transported in interstate commerce. The very nature of the crime requires the government to prove a prior offense by the defendant. This permits the government to attack the character of the defendant in its case in chief which Taylor contends violates the fifth amendment to the United States Constitution. Similar challenges to these statutory provisions were considered in *United States v. Thoresen*, 428 F.2d 654 (9th Cir. 1970), *United States v. Craven*, 478 F.2d 1329 (6th Cir. 1973). The court in *Thoresen* stated:

> In our opinion, this provision of the statute does not adversely affect the presumption of innocence which prevails at federal criminal trials and which is guaranteed by the Due Process Clause of the Fifth Amendment.

428 F.2d at 661.

The district court in the instant case gave a cautionary instruction to the jury which stated:

> The defendant's previous indictment for attempted burglary is an essential element as to Counts VII, VIII, IX and X of the indictment.
>
> You are instructed that the fact of the indictment of the defendant is no evi-

---

2. It is, however, clear that the statements made by Worley were not "statements" within the meaning of the Jencks Act. *See United States v. Anthony*, 565 F.2d 533 (8th Cir. 1977).

dence that the defendant is guilty either of the charge of attempted burglary or of the charge for which he is now on trial.

You are only to consider the fact of the indictment of the defendant for attempted burglary in considering whether or not he has knowingly violated the federal statutes for which he is here on trial. We reiterate that there existed sufficient evidence for convictions under Counts I through VI. In light of the decision on the sufficiency of the evidence and in light of the court's cautionary instructions, we find that no prejudice accrued to the defendant through the introduction of this evidence.

In conclusion, we affirm the conviction on Counts I, II, III, IV, V and VI for the reasons stated herein. We reverse the trial court's ruling on the suppression of the evidence as to Counts VII, VIII, IX, X and XI and remand with directions to dismiss the conviction of Taylor under Counts VII, VIII, IX, X and XI and to set aside the sentences imposed under those counts.

McMILLIAN, Circuit Judge, concurring.

Because I agree that the evidence as to Counts I through VI was sufficient, I concur in the result. I am, however, neither convinced nor persuaded by either *United States v. Thoresen*, 428 F.2d 654 (9th Cir. 1970) or *United States v. Craven*, 478 F.2d 1329 (6th Cir. 1973) as to the legality of 18 U.S.C. § 922(h)(1) and § 924(a).

Likewise, I have some serious reservations as to the effectiveness of an explanatory, limiting instruction in a close case to remove the inherent prejudice injected once the jury has been informed of a defendant's prior indictment.

APPENDIX

# UNITED STATES DISTRICT COURT

FOR THE

EASTERN JUDICIAL DISTRICT OF MISSOURI

United States of America

vs.

1728 Seiferts Drive, Poplar Bluff, Missouri.

## AFFIDAVIT FOR SEARCH WARRANT

BEFORE John L. Oliver, Jr., H & H Office Bldg., Cape Girardeau, Missouri

The undersigned being duly sworn deposes and says:

> That he (has reason to believe)[1] that (on the premises) located at 1728 Seiferts Drive, Poplar Bluff, Missouri, and described as a single story white concrete block dwelling with out buildings and appurtenances located approximately 200 feet southeast of the intersection of Seiferts Drive and Perkins Drive and reflecting the numbers 1728 on the front of the house, and further described as having the main entrance located on the southeast side of the house.

in the Eastern Judicial District of Missouri there is now being concealed certain property, namely stolen firearms and firearms and parts to manufacture firearms which are described in Chapter 53, Title 26, U.S.C., and which are not registered with the Secretary of the Treasury as required by law and which are in violation of 18 U.S.C., Section 922(a)(1) and 26 U.S.C., Sections 5861(a) and (f).

> And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

> > On or about May 30, 1978, and May 31, 1978, between 10:30 p. m., and 5:45 a. m., a burglary occurred at the 303 Package and Sporting Goods Store, 303 S. Main Street, Poplar Bluff, Missouri, a Federally licensed firearms dealer. During the burglary thirty-five handguns (revolvers and pistols) were stolen.

> > On June 22, 1978, after Clifford Worley told Douglas A. Gilmore, a Special Deputy Sheriff, Butler County Sheriff's Department, Poplar Bluff, Missouri, that he knew an

individual that had a "machinegun" for sale, Gilmore drove Worley, who ostensibly does not own a vehicle to the intersection of 14th Street and Seiferts Drive, in Poplar Bluff, Missouri. Later this same date, Worley telephoned Gilmore and advised him that he had the firearm. Shortly thereafter, Gilmore picked up Worley at an apartment complex on Bartlet Street, in Poplar Bluff, Missouri, and Worley had in his possession a fully automatic "machinegun" further described as a National Ordinance Inc., .30 caliber carbine with attached M–2 conversion kit. At approximately 6:30 p. m., this same date, Gilmore drove Worley to a parking lot located next to Coleman's Barbecue Restaurant on Highway #67 in Poplar Bluff, Missouri. At this location Gilmore introduced Worley to Bureau of Alcohol, Tobacco and Firearm's Special Agent Victor J. Herbert, Jr., who was working in an undercover capacity. Subsequently, Special Agent Herbert purchased the above described firearm from Worley for $350.00. During Special Agent Herbert's conversation with Worley, Worley stated that there was another person involved with him in the sell; consequently, he could not reduce the selling price of the firearm.

On June 29, 1978, at approximately 7:15 p. m., Gilmore and Special Agent Herbert drove Worley to 1728 Seiferts Drive in Poplar Bluff, Missouri, after they told him that Special Agent Herbert wanted to purchase several handguns. After Worley got out of the vehicle he was observed walking toward the southeast corner of the residence. At the same time Special Agent Herbert observed a green Plymouth Baracuda parked next to the residence at 1728 Seiferts Drive. When Worley was with Gilmore and Special Agent Herbert he did not have any visible firearms or packages in his possession. As instructed by Worley, Special Agent Herbert and Gilmore then drove to Bacon Memorial Park in Poplar Bluff to wait for Worley. At approximately 7:20 p. m., Special Agent Tommy F. Noel observed Worley, who was wearing a pink T-shirt, and another unknown white male get into the green Plymouth Baracuda, parked in the driveway of the 1728 Seiferts Drive address. Immediately thereafter, Special Agents Roger L. Moen and Noel observed the Plymouth Baracuda which was bearing Missouri license Y6L–022, travel from the residence to the entrance of Bacon Memorial Park, where at approximately 7:25 p. m., Worley got out of the vehicle and walked into the park carrying a blue package. Worley then walked to the vehicle occupied by Gilmore and Special Agent Herbert, which was parked in Bacon Memorial Park. Shortly after Worley got into the vehicle he showed Gilmore and Special Agent Herbert two handguns which were wrapped in blue denim cloth and a third handgun which he had concealed under his shirt. After some discussion Special Agent Herbert purchased the three handguns from Worley for $275.00. During their discussion Worley told Special Agent Herbert that the three handguns were "very hot." Worley also told Special Agent Herbert that the man that dropped him at the entrance to the park was "his main man," that he was the individual that supplied the "machinegun" that he (Herbert) had previously purchased, that he is the individual that orders parts to make the "machineguns," and that he is probably the "biggest gun dealer" in Poplar Bluff, Missouri.

On this same date, Special Agent Moen determined that the three firearms purchased from Worley were part of thirty-five handguns reported stolen from the 303 Package and Sporting Goods Store in Poplar Bluff, Missouri, on May 30 or 31, 1978.

On July 13, 1978, at approximately 4:45 p. m., after contacting Worley again and requesting to purchase another "machinegun," Special Agent Herbert picked Worley up at his residence, 1923 Bradley Street, Poplar Bluff, Missouri, and drove him directly to 1728 Seiferts Drive. When Worley got out of the vehicle Special Agent Herbert then observed him walk to the entrance of the residence which is located on the southeast side of the house and knock. At the same time Special Agent Herbert again observed the previously described Plymouth Baracuda parked in the residence driveway. When Special Agent Herbert drove Worley to this residence, Worley did not have any visible firearms in his possession. At approximately 5:30 p. m., Worley and another white male, believed to be James Lee Taylor, were observed driving the previously identified green Plymouth Baracuda from the residence on Seiferts Drive to the intersection of 14th Street and Highland Road, in Poplar Bluff, Missouri. At this location Worley was observed getting out of the vehicle carrying an unknown object wrapped in a brown

paper sack and walking a short distance to Bacon Memorial Park where he joined Special Agent Herbert. When Worley joined Special Agent Herbert he had in his possession a fully automatic "machinegun" further described as an Inland .30 caliber carbine with attached M–2 conversion kit. Special Agent Herbert subsequently purchased this firearm for $350.00. When Special Agent Herbert purchased the firearm he observed that the serial number had been filed off and he questioned Worley about this. Worley stated that he and his friend had removed the serial number. Immediately after Worley got out of the green Plymouth Baracuda, Taylor was observed driving this vehicle back to the previously identified Seiferts Drive address.

Subsequently to their purchase, the two machineguns were testfired and they were found to operate and function as fully automatic firearms.

On July 13, 1978, during Special Agent Herbert's discussion with Worley, Worley offered to sell to Special Agent Herbert additional firearms the following week if Special Agent Herbert would contact him. On July 18, 1978, at approximately 2:20 p. m., Special Agent Herbert telephoned Worley's residence and was informed by an unknown female who answered the telephone that Worley had departed for Montana this date to seek employment.

On July 19, 1978, Special Agent Moen caused the files of the Bureau of Alcohol, Tobacco and Firearms, Midwest Region, Firearms Licensing Section, to be reviewed for any record of a license to deal in firearms being issued to Clifford Worley, 1923 Bradley Street, Poplar Bluff, Missouri, James Lee Taylor, or 1728 Seiferts Drive, Poplar Bluff, Missouri. This review failed to disclose any license being issued to the above identified individuals or addresses.

(s)   Jimmy D. Bowen          ,
*Signature of Affiant.*

(s)   Special Agent, ATF       ,
*Official agent, if any.*

Sworn to before me, and subscribed in my presence, July 19, 1978..

(s)   John L. Oliver         ,
*United States Magistrate.*

[1] The Federal Rules of Criminal Procedure provides: "The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time." (Rule 41C).