**UNITED STATES of America, Appellee,**

v.

**Noel Harold LEGENDRE, Appellant.**

**No. 80–2046.**

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1981.

Decided Sept. 2, 1981.

Certiorari Denied Nov. 9, 1981. See 102 S.Ct. 580.

Joseph T. Walbran, Asst. U. S. Atty., Dist. of Minnesota, Minneapolis, Minn., for appellee.

Phillip S. Resnick, Minneapolis, Minn., for appellant.

Before HENLEY and ARNOLD, Circuit Judges, and FILIPPINE,* District Judge.

FILIPPINE, District Judge.

Appellant, Noel Harold Legendre, was convicted, after a jury trial, on two counts of distribution of methamphetamine. He was given concurrent sentences of three years imprisonment and a four-year special parole term on each count.

Legendre argues for reversal on four grounds. He claims that the district court erred in denying his motion for a mistrial based on efforts by counsel for the government to elicit evidence as to other crimes and to refer to such evidence in closing argument. Legendre also claims that the evidence was insufficient to sustain his conviction, that the trial court erred in denying his motion for a new trial based on newly discovered evidence, and that the trial court erred in denying the motion to dismiss the indictment based on preindictment delay. We affirm.

Legendre's first argument is that counsel for the government deliberately flouted the trial court's rulings as to evidence of crimes other than those charged in the indictment, with the result that Legendre was deprived of a fair trial. The district judge denied Legendre's oral motion for a mistrial based on reference in the government's closing argument to certain evidence of other crimes, and the district judge also denied Legendre's motion for a new trial on that basis, finding that the government's closing argument "accurately summarized" the testimony of Ronald Walstrom, Legendre's accomplice.

---

* The Honorable Edward L. Filippine, United States District Judge, Eastern District of Missouri, sitting by designation.

The critical incriminating evidence at trial was supplied by Walstrom. Walstrom testified that on January 22, 1979, and February 12, 1979, he took four ounces, or 114 grams, of methamphetamine, to the home of his friend Salvador Caberea. On both occasions, Walstrom testified, he remained in Caberea's house while Caberea went to the basement of the house with Kathleen Ascherman, an undercover narcotics agent of the Minneapolis police department, and Caberea sold the methamphetamine delivered by Walstrom to Officer Ascherman. Walstrom testified that on both occasions, after Officer Ascherman had left Caberea's residence, Walstrom took to Legendre the $2,400.00 which had been paid for the methamphetamine, less Walstrom's and Caberea's shares of the purchase price. Prior to both sales, according to Walstrom, he had obtained the methamphetamine from Legendre; he obtained it only several hours before the sale of January 22, but several days before the transaction of February 12. Walstrom also testified on direct examination that at the time of these transactions he knew Legendre as "Noel" (only) and testified, with the aid of a map, about the respective locations of their residences. According to Walstrom's direct testimony, he had a trusting relationship with Legendre.

Walstrom further stated on direct examination that he made three to five distributions of methamphetamine, "mostly" in January of 1979, and all to Caberea. There was no objection to that testimony. However, when counsel for the government later asked Walstrom on direct examination how many times he had acted as a middleman between Legendre and Caberea, and Walstrom answered "three to five times," defense counsel objected. The district judge [1] sustained the objection, ordered the answer stricken, and told counsel for the government to limit his questions to the two occasions charged in the indictment, January 22 and February 12 of 1979.

On cross examination, Walstrom admitted that he did not know Legendre's last name at the time of these distributions, and that despite the fact that he lived only six blocks from Legendre, Legendre trusted him to take the $2,400.00 worth of methamphetamine for each sale without advance payment. Walstrom testified, in effect, that he had credit with Legendre.

On redirect, the following interchange occurred:

Q. What was the basis of that trust, how he [Legendre] had come to trust you?

A. I paid off on previous deals.

Q. How many previous deals?

MR. RESNICK (defense counsel): Object again as outside the—

THE COURT: Objection sustained. ..

MR. WALBRAN (Assistant United States Attorney): May we approach the bench, Your Honor.

THE COURT: You can make an offer of proof if you would like.

(Proceedings at the bench.)

MR. WALBRAN: Your Honor, it is simply that counsel has bored in repeatedly on the fact that this man whose last name you didn't know trusted you, this man who lived six blocks away and whose last name you didn't know trusted you and I think the jury now has a right to know why he trusted him and the basis for that trust.

THE COURT: What you want to do is prove other crimes.

MR. WALBRAN: Absolutely, in response to what counsel has done here.

\*    \*    \*    \*    \*    \*

THE COURT: I think I will sustain the objection under Rule 404 as evidence of other crimes that I would rather not get into under the circumstances.

\*    \*    \*    \*    \*    \*

MR. RESNICK: I would ask the question and answer be stricken.

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

THE COURT: I think I have taken care of that.[2]

Finally, on closing argument, defense counsel argued that it didn't make any sense that Legendre supposedly had twice trusted Walstrom with $2,400.00 worth of methamphetamines, when Walstrom did not even know Legendre by his last name. In response, in rebuttal, counsel for the government argued:

> Counsel keeps harping on why would he trust him. Obviously, you have to sell drugs and you either have to get money down or you have to front them. Ronald Walstrom carefully explained it, as counsel said, Walstrom hints there were other times, that is not what Walstrom said, Walstrom said he trusted me because of prior dealings, two or three prior dealings.
>
> MR. RESNICK: I will object to that as an improper statement that has been stricken.
>
> THE COURT: The number of dealings involving the testimony in that regard was in fact stricken from the record.
>
> MR. RESNICK: And also move for a mistrial.
>
> THE COURT: It was stricken, the number of dealings was stricken and the witness was not permitted to testify.
>
> MR. WALBRAN: I accept the Court's recollection.
>
> \* \* \* \* \* \*
>
> The number of deals is stricken, there were prior deals, counsel himself tells you from the testimony there were other times.

Legendre argues that the above-described question and argument by counsel for the government amounted to flagrant prosecutorial misconduct, which when considered with the weakness of the case against him, deprived Legendre of a fair trial. He does not argue that the district judge erred in denying the motion to strike Walstrom's testimony on redirect that he had "paid off on previous deals." Instead, he argues that it was improper for the prosecutor to ask the question as to the number of deals, because the district judge had sustained an objection to a similar question on direct examination, and had ordered the answer to the question stricken.

The government argues on appeal, as it did at trial, that the question was proper because it was an attempt to rehabilitate Walstrom after the cross-examination's attack on the credibility of Walstrom's description of Legendre's attitude towards Walstrom as one of trust. This Court has previously implied that rehabilitation may be a proper purpose under Fed.R.Evid. 404(b).[3] However, we consider it somewhat doubtful that the cross-examination of Walstrom in this regard amounted to impeachment. There was no new evidence pertaining to the "trusting relationship" adduced on cross examination; the cross-examination merely reviewed certain aspects of the direct examination. Certainly, the cross-examination cannot be classified under any of the five chief modes of impeachment. *See McCormick on Evidence* 66 (Cleary ed. 1972). Because it is doubtful that any true

---

**2.** Both in his discussion of the oral motion for a mistrial and in his ruling on the motion for a new trial, the district judge made it clear that he had not stricken Walstrom's testimony that he had "paid off on previous deals."

**3.** *United States v. Pintar*, 630 F.2d 1270, 1284 (8th Cir. 1980); *United States v. Jones*, 545 F.2d 1112, 1115 (8th Cir. 1976), *cert. denied* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). But *cf. United States v. Sampol*, 636 F.2d 621, 659 n.24 (D.C.Cir.1980) (cross-examination of a witness concerning his prior specific acts, probative of credibility, should be governed by Fed.R.Evid. 608 rather than Rule 404(b)); *United States v. Phillips*, 599 F.2d 134, 137 (4th Cir.

1979) ("[q]uestions on redirect designed to rehabilitate a witness by showing that the defendant had a general readiness or propensity to rob banks are just as objectionable under Rule 404(b) as such questions on direct.")

Fed.R.Evid. 404(b) provides as follows:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

impeachment occurred on cross-examination,[4] we decline to decide whether rehabilitation was a purpose which would have justified the introduction of the other crimes evidence under Rule 404(b).

■ However, the Court does agree with the government that the disputed question was proper for other purposes under Fed.R. Evid. 404(b). The evidence would have been admissible to show a method or scheme of operation which embraced incidents in addition to those charged, *United States v. Rabbitt*, 583 F.2d 1014, 1028 (8th Cir. 1978), *cert. denied* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979), especially in view of Walstrom's testimony that most of his three to five methamphetamine distributions occurred in January of 1979. *See United States v. Fearns*, 501 F.2d 486, 490–91 (7th Cir. 1974); *United States v. Burkley*, 591 F.2d 903, 920 (D.C.Cir.1978), *cert. denied* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979). The information sought also would have been relevant to show the nature of Walstrom's relationship with Legendre, and hence to show Legendre's motive in dealing in drugs with Walstrom. *United States v. Scholle*, 553 F.2d 1109, 1120–21 (8th Cir.), *cert. denied* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977).

Of course, in order to have been admissible, the answer to the disputed question about the number of previous deals also would have had to be clear and convincing evidence, and would have had to be more probative than prejudicial to Legendre. *Id.*, at 1121. There is little doubt that Walstrom's answer to the question would have satisfied both conditions. Therefore, we find that the district judge would not have abused his discretion had he allowed the question to be answered, and the question itself was not improper.

Nor do we find that the remarks in closing argument, whether considered alone or in combination with the question discussed above, required a mistrial. Although Walstrom's testimony as to the exact number of times he had served as a middleman between Walstrom and Caberea had been stricken, his testimony on redirect as to the fact that there were "previous deals" between himself and Legendre had not been stricken. Since "previous deals" must mean at least two such deals, the closing remarks of counsel for the government can be viewed as only a reasonable inference from the evidence that remained in the record. The fact that the prosecutor erroneously characterized that inference as testimony from Walstrom was not so prejudicial as to require a new trial. Moreover, the district judge, in ruling on the motion for a mistrial, stated that he did not find any intentional effort on the part of the prosecution to misstate the testimony. Accordingly, we find no error in the denial of Legendre's motion for a mistrial.

Legendre next argues that because there was no substantial evidence to support his conviction, beyond the testimony of Walstrom, the evidence was insufficient. While acknowledging candidly that our cases have often held that "the uncorroborated testimony of an accomplice is sufficient to sustain a conviction if it is not otherwise incredible or unsubstantial on its face," *United States v. Taylor*, 599 F.2d 832, 838 (8th Cir. 1979); *United States v. Fitts*, 635 F.2d 664, 667 (8th Cir. 1980); *United States v. Abrahamson*, 568 F.2d 604, 607 (8th Cir. 1978), Legendre argues nonetheless that in such cases, there did exist substantial corroboration for the accomplice testimony.

■ Of course, as a practical matter, it is the exceptional case in which the accomplice testimony stands totally alone, with no

---

4. The only possible exception to this is the fact that on cross-examination Walstrom said in so many words that he had not known Legendre's last name at the time of the incidents in question, whereas this lack of knowledge was only implied by his testimony on direct that he had known the defendant as "Noel." However, in view of the extremely marginal relevance of the fact that Walstrom did not know the defendant's last name, the Court does not believe that this gave any weight to the supposed impeachment. (The situation might have been different if it had been Legendre who did not know Walstrom's last name.)

supporting props whatever, and this is not such a case. Officer Ascherman testified that she saw Walstrom in Caberea's home on both occasions, and various surveillance officers testified that Walstrom stayed in the house in which Legendre was living for very brief periods after each sale. Legendre himself was observed to depart from the house on both occasions after Walstrom had left.

■ However, the sufficiency of the evidence does not depend on the presence of even that much corroboration of Walstrom's testimony, for this Court adheres to the rule that accomplice testimony, if not unsubstantial or inherently incredible, is sufficient in itself. In United States v. Taylor, supra, the Court observed that the accomplice testimony alone was sufficient to sustain the conviction on certain counts,[5] and that the "additional corroborating evidence by the surveilling agents only strengthen[ed] the case" against the defendant, 599 F.2d at 838. Moreover, as to an additional count of conspiracy, Taylor held that the bare accomplice testimony sufficed. We are convinced after a review of the record that Walstrom's testimony was not unsubstantial or incredible on its face, and we hold that the evidence was sufficient to support Legendre's convictions.

■ Legendre's third ground for reversal is that his motion for a new trial on the basis of certain newly discovered evidence, i.e., the testimony of his ex-roommate, should have been granted. The district judge held a hearing on the motion and entered a memorandum order denying the motion on the alternative grounds that Legendre had not used due diligence in attempting to procure the evidence before trial and that the new evidence probably would not produce an acquittal. Those two criteria are among the conditions which must be satisfied for a new trial on the basis of newly discovered evidence. United

States v. Conzemius, 611 F.2d 695 (8th Cir. 1979). We are satisfied after review of the transcript of the hearing and the district judge's thorough ruling on the motion that there was no abuse of discretion in the denial of the motion.

Finally, Legendre argues that the trial court erred in denying his motion to dismiss the indictment based on pre-indictment delay. Legendre was indicted in May, 1980, for offenses which had occurred in January and February of 1979. The district judge denied the motion after hearing arguments of counsel, finding that the delay had not been prejudicial and that it had not been excessive.

■■ It is well settled that a showing of actual prejudice from a delay on the part of the government may entitle a defendant to dismissal of the charges against him. United States v. Taylor, 603 F.2d 732, 735 (8th Cir.), cert. denied 444 U.S. 982, 100 S.Ct. 487, 62 L.Ed.2d 487 (1979). The only real claim of prejudice pressed by Legendre is that it had become difficult for him to locate his ex-roommate. However, the record from the hearing on the motion for a new trial on the basis of newly discovered evidence shows that in fact Legendre knew where to contact his ex-roommate and that the ex-roommate's testimony would not have been particularly helpful to Legendre. Accordingly, no prejudice was shown.

The judgment of conviction is affirmed.

---

5. The conviction on certain other counts was reversed due to error in the trial court's denial of a motion to suppress physical evidence obtained pursuant to a search warrant.