UNITED STATES of America, Appellee,

v.

Lee S. LEICHTLING, Appellant.

No. 81–2252.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1982.

Decided July 19, 1982.

Rehearing and Rehearing En Banc
Denied Aug. 10, 1982.

Arthur S. Margulis, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U. S. Atty., Mitchell F. Stevens, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT and HENLEY,[*] Circuit Judges, and BARTLETT,[**] District Judge.

HENLEY, Senior Circuit Judge.

Lee S. Leichtling has appealed his conviction in the district court[1] on six counts of obtaining a controlled substance by fraud, in violation of 21 U.S.C. § 843(a)(3), and one count of possession of a Schedule II controlled substance with intent to distribute, in violation of 21 U.S.C. § 843(a)(1). The gravamen of Leichtling's contentions on appeal is that twenty-nine of the government's exhibits (described in the Appendix hereto) were improperly admitted into evidence in violation of his fourth amendment rights. For reasons to be stated, we affirm.

In early July, 1981 federal Drug Enforcement Administration (DEA) agents applied

to a federal magistrate for a warrant to search the residence of appellant, a thirty-seven year old dentist. This application was accompanied by an affidavit; however, none of the agents applying for the warrant testified before the magistrate. The affidavit stated that DEA agents had received information regarding a series of purchases of pharmaceutical cocaine by the Rock Road Pharmacy in DeSoto, Missouri, and that further investigation had revealed that a shipment of two bottles of cocaine-hydrochloride was to be delivered to that pharmacy on May 22, 1981. According to the affidavit, surveillance initiated by the officers revealed an individual, subsequently identified as Dr. Leichtling, leaving the pharmacy with two similar bottles, which had been placed in a brown plastic case. This individual entered a blue Mercedes convertible and drove "in the direction of the residence which is the subject of this search warrant." The affidavit also recited that appellant was observed on July 10, 1981 exiting the pharmacy with two one-ounce bottles, which had apparently been placed in the same plastic case,[2] and that he entered his automobile and "proceeded to drive to the above-described residence." The affidavit further recited that Leichtling had never been authorized or registered to possess, distribute or dispense Schedule II substances.

The warrant was issued, and at approximately 8:15 a. m. on July 17, 1981 law enforcement officers arrived at Dr. Leichtling's home. They were greeted at the door by the appellant. The officers introduced themselves and asked if they could discuss with him the cocaine purchases. The doctor admitted them to his house, and he was immediately thereafter advised of his *Miranda* rights.[3] Appellant was asked

---

[*] The Honorable J. Smith Henley assumed senior status on June 1, 1982.

[**] The Honorable D. Brook Bartlett, United States District Judge, Western District of Missouri, sitting by designation.

1. The Honorable James H. Meredith, United States Senior District Judge, Eastern District of Missouri.

2. The officers' information indicated that the pharmacy had received an additional shipment of two one-ounce bottles of cocaine-hydrochloride on that day.

3. The evidence fairly indicates that five law enforcement officers were present at this time.

if he used cocaine in his practice, and he stated that he mixed a 4–6% solution in tap water at home, to be administered during root canal work. He also stated that he mixed the solution at home for fear that someone would break into his office and take the cocaine. When asked if he would surrender the cocaine, he assented and allowed an agent to accompany him to his bedroom, where he opened a dresser drawer and removed two bottles of cocaine. One of these bottles had been opened, and about one-quarter of the contents of that bottle was missing.

Appellant was subsequently placed under arrest and advised that the officers had a search warrant. A search of the house was made, and other evidence was seized. The officers also seized appellant's automobile, which was parked outside his house. After seizure, but before impoundment, the vehicle was searched and a scale and a bottle labeled "cocaine hydrochloride" were taken from the trunk of the car.

Evidence was also obtained from appellant's office on the same day. The DEA agents who went to that office had in their possession an administrative search warrant for the doctor's records. However, they also requested samples of his mouthwash solutions, and these samples were given to them by appellant's dental assistant.[4]

Leichtling's primary contention on appeal is that the warrant for the search of his residence was defective and that all fruits of that search should therefore have been suppressed. He bases this contention on the fact that the affidavit fails to establish that the DEA agents saw him enter his house.

■ The district court found that at the time the warrant was applied for, the issuing magistrate relied solely on the affidavit which was presented to him, and that no evidence was adduced before the magistrate. In these circumstances, only that information which is found within the four corners of the affidavit may be considered

in determining the existence of probable cause. *See United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971); *United States v. Pinkerman*, 374 F.2d 988, 989 (4th Cir. 1967); *Gillespie v. United States*, 368 F.2d 1, 3 (8th Cir. 1966).

■ In reviewing the validity of the warrant, we are guided by certain well established general principles. The search of Leichtling's house was sanctioned by a magistrate's issuance of a search warrant based upon a finding of probable cause. "Courts evince a strong preference for searches made pursuant to warrant, and, in some instances, may sustain them where warrantless searches based on a police officer's evaluation of probable cause might fail." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *United States v. Christenson*, 549 F.2d 53, 55 (8th Cir. 1977). *See United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965); *United States v. McGlynn*, 671 F.2d 1140, 1146 (8th Cir. 1982). Accordingly, reviewing courts should interpret affidavits for search warrants in a commonsense and realistic fashion, and deference is to be accorded an issuing magistrate's determination of probable cause. *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *United States v. Brown*, 584 F.2d at 256. "[I]n doubtful or marginal cases, the resolution of the Fourth Amendment question should be determined to a large extent by the preference accorded to searches based upon warrants." *United States v. Christenson*, 549 F.2d at 55. *See United States v. Ventresca*, 380 U.S. at 109, 85 S.Ct. at 746; *United States v. Brown*, 584 F.2d at 256, *and cases cited therein*.

Appellant relies primarily on *United States v. Taylor*, 599 F.2d 832 (8th Cir. 1979), in support of his contention that the affidavit in the case at bar was inadequate. In *Taylor*, the affidavit recited that one Worley was observed exiting a vehicle and walking toward a residence which was as-

---

4. The record reflects that the requesting officer probably had been in telephone contact with the DEA agents at appellant's residence prior to the time this request was made.

sumedly used to store illegally obtained firearms. Because Worley, who was an alleged coconspirator, had not been observed entering or exiting that residence, this court held that there was only a suspicion that Worley had actually done so. *Id.* at 836. In *Taylor*, however, the affidavit did not recite that the residence was occupied by either Taylor or Worley, while in the instant case it is not disputed that the application for the warrant and the supporting affidavit described the residence to be searched as appellant's residence, as it in fact was.

It is settled in this circuit that when an application for a warrant is being considered, the issuing magistrate may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of fact contained in the affidavit. *United States v. McGlynn,* 671 F.2d at 1146; *United States v. Brown,* 584 F.2d at 256, *and cases cited therein.* As this rule is applied to the instant case, we think the recitation in the affidavit that Dr. Leichtling was observed to drive "to" his residence raises a reasonable inference that he actually entered his residence, because we can think of few situations where a person would drive to his residence without entering it. Further, this court has held that " '[t]he affidavit need only establish the *probability* of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt.' " *United States v. Brown,* 584 F.2d at 257, *quoting United States v. Smith,* 462 F.2d 456, 460 (8th Cir. 1972) (emphasis original). We think the affidavit in this case establishes the requisite probability, and therefore hold that the search warrant was validly issued. *But see United States v. Schmidt,* 662 F.2d 498, 505 n.9 (8th Cir. 1981) (dictum).

Appellant next argues that the seizure of the two bottles labeled "cocaine hydrochloride" taken from his dresser was invalid because the seizure was not made pursuant to a valid consent. We disagree.

In *United States v. Allison,* 619 F.2d 1254 (8th Cir. 1980), this court stated:

[I]n normal consent search situations, "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* [412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)].

Since the issue of consent is usually a factual one, a district court's finding of involuntariness must be accepted on appeal unless the finding is clearly erroneous. *Martin v. United States,* 586 F.2d 1206, 1211 (8th Cir. 1978); *United States v. Hearn,* 496 F.2d 236, 242 (6th Cir.), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974).

*Id.* at 1262. This standard, moreover, has not been affected by recent Supreme Court decisions such as *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

The evidence shows that appellant was approximately thirty-seven years old at the time of the consent, and that he is an educated man. In addition, there is no dispute that appellant was read his *Miranda* warnings, and stated that he understood them, no more than ten minutes prior to the time of consent. These are all factors which may be considered by the district court in determining whether there was a voluntary consent. *See Schneckloth v. Bustamonte,* 412 U.S. at 226, 93 S.Ct. at 2047; *United States v. Matthews,* 603 F.2d 48, 52 (8th Cir. 1979).

Appellant nevertheless contends that the presence of police officers[5] and the failure of the law enforcement officers to inform him that he could withhold consent indicate that there was no voluntary consent on his part. We observe, however, that even where the presence of officers could be construed as constituting "custo-

---

5. In this context, appellant also claims that the officers were already searching the living room at the time of the consent. However, our re-

view of the transcript reveals that there was credible testimony that no such search was being conducted at that time.

dy," custody alone has never been sufficient to show that consent to a search was the result of coercion. *United States v. Matthews*, 603 F.2d at 52. Further, while failure to inform a person of his right to withhold consent is a factor that may be taken into account in determining whether there has been a voluntary consent, *United States v. Mendenhall*, 446 U.S. at 558–59, 100 S.Ct. at 1879, law enforcement officers are nevertheless not required to inform a person of his or her right to withhold consent as a prerequisite to the validity of such consent. *Schneckloth v. Bustamonte*, 412 U.S. at 231–33, 93 S.Ct. at 2049–50.

We conclude that the district court could properly find, in the totality of the circumstances, that Leichtling's actions in removing the bottles from his dresser drawer and surrendering them to the DEA agents constituted a voluntary consent on his part. The district court's findings in this regard are not clearly erroneous and will therefore be upheld.

Appellant's remaining contentions concern the admissibility of evidence obtained from the trunk of his automobile and from his dental office. However, as the Appendix shows, the nature of this evidence is such that it is cumulative at best. Thus, even if we assume for the purposes of this discussion that this evidence was improperly seized, any error in its admission was harmless beyond a reasonable doubt. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The judgment of the district court is affirmed.