# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2617
_____

United States of America,      *
     *
     Appellee,      *
     *      Appeal from the United States
     v.      *      District Court for the
     *      District of Nebraska.
Merrill D. Olvey, Jr.,      *
     *
     Appellant.      *

_____

Submitted: December 13, 2005
Filed: February 14, 2006
_____

Before BYE, BEAM and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Merrill D. Olvey, Jr. ("Olvey") appeals the denial by the district court[1] of his motion to suppress evidence obtained in a search of his residence. Olvey contends that the search warrant was not supported by probable cause. For the reasons discussed below, we affirm the judgment of the district court.

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the report and recommendations of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

## I.    BACKGROUND

On January 23, 2004, in Box Butte County, Nebraska, Olvey's then-wife, Kerry Olvey, obtained an ex parte protection order against Olvey.  The protection order forbade Olvey from "threatening assaulting, molesting, attacking, or otherwise disturbing the peace of" Kerry.  It also temporarily awarded sole custody of the Olveys' children to Kerry and forbade Olvey from going to the children's school.  Olvey was served with the protection order while incarcerated in the county jail.  As required by Neb. Rev. Stat. § 42-925, enacted as part of the Nebraska Protection from Domestic Abuse Act, Olvey was given notice that he had five days to challenge the order by filing a Request for Hearing form.  He immediately completed the form and gave it to the jailer for transmission to the clerk of the county court.  However, the form never reached the court.

Kerry and the children moved to Texas.  After his release from the county jail, Olvey moved to modify the protection order to allow him to visit the children's former school and to gain telephone visitation privileges with the children.  On March 9, 2004, a hearing was conducted on Olvey's request for modification.  Olvey chose not to attend but was represented by counsel.  The Nebraska district judge signed a journal entry on March 10, 2004, ordering that the protection order be modified as requested by Olvey.

On September 15, 2004, Special Agent Ronald E. Meadows of the Bureau of Alcohol, Tobacco, Firearms and Explosives applied for a warrant to search for firearms in Olvey's residence, asserting probable cause to believe that Olvey was a prohibited person in possession of firearms in violation of 18 U.S.C. § 922(g).[2]  The

---

[2]18 U.S.C. § 922(g) states:

It shall be unlawful for any person . . .
(8) who is subject to a court order that–

search warrant application included copies of the original protection order and the journal entry modifying the order. Paragraph 4(f) of Meadows's supporting affidavit stated:

> OLVEY is listed as the Respondent on a current Domestic Abuse Protection Order . . . dated January 23, 2004 . . . and remaining in effect for one year from that date. A copy of the Protection Order and related Journal are attached as exhibit 3. . . . The protection order . . . does, by its terms, explicitly prohibit Olvey from threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner (Olvey's wife), which appears to satisfy the requirements of 18 U.S.C. § 922(g)(8)(C)(ii). The backside of the protection order contains a paragraph entitled "Firearms Prohibition" . . . . [T]his paragraph states "If a final order is entered against you after a hearing, whether or not you attended, you are prohibited from possessing . . . a firearm or ammunition . . . [under] 18 U.S.C. § 922(g)(8)." A final order was entered against Olvey after hearing at which he was represented by an attorney on March 9, 2004, as reflected by the attached Journal Entry (exhibit 3).

-----

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
  (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury
. . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The magistrate judge issued the search warrant. The law enforcement personnel who conducted the search found a sawed-off shotgun in Olvey's possession. Olvey was charged with possession of the sawed-off shotgun in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. He moved to suppress the discovery of the shotgun, arguing that the search warrant was not supported by probable cause and that Meadows's affidavit included a false statement made intentionally, or with reckless disregard for the truth, that misled the magistrate judge. The same magistrate judge who issued the search warrant wrote a report and recommendation denying the motion to suppress, ruling that the affidavit established probable cause regardless of Meadows's allegedly misleading statement and that, in any case, the good faith exception to the exclusionary rule would apply. The district court adopted the report and recommendation. Olvey entered a conditional plea of guilty to the charge of possession of the sawed-off shotgun, preserving his right to appeal the denial of his motion to suppress. The district court sentenced Olvey to ten months' imprisonment. Olvey now appeals the denial of his motion to suppress.

## II. DISCUSSION

This court reviews a magistrate judge's determination of probable cause "to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (alteration in *Gladney*). "The task of the issuing magistrate is to make 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Gates*, 462 U.S. at 238). Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon "only that information which is found within the four corners of the affidavit." *Id.* (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982)).

Olvey's argument centers on whether the warrant application demonstrated that he was a prohibited person under § 922(g)(8). The protection order as modified by the journal entry satisfies the requirements of § 922(g)(8)(B) and (C) because it restrains Olvey from threatening assaulting, molesting, attacking, or otherwise disturbing the peace of his wife. Furthermore, the journal entry "was issued after a hearing of which [Olvey] received actual notice, and at which [Olvey] had an opportunity to participate." § 922(g)(8)(A). Therefore, on its face the protection order as modified rendered Olvey a prohibited person according to the three requirements of § 922(g)(8).

Olvey contends that the March 9 hearing did not satisfy § 922(g)(8)(A) because, under the Nebraska Protection from Domestic Abuse Act, he was unable to litigate the merits of the protection order unless he requested a hearing within five days after he was served with the ex parte order.[3] This argument is incorrect. Under Nebraska law, a state district court generally retains power to address the full merits of any order it issues during a term. *See, e.g.*, *Talkington v. Womens Servs., P.C.*, 588 N.W.2d 790, 794 (Neb. 1999) ("[A] district court has the inherent authority to vacate or modify its decision within the same term that the initial decision was rendered."). In addition, Neb. Rev. Stat. § 25-2001 provides:

> (1) The inherent power of a district court to vacate or modify its judgments or orders during term may also be exercised after the end of

---

[3]Neb. Rev. Stat. § 42-925 states:

If the respondent wishes to appear and show cause why the [ex parte] order should not remain in effect, he or she shall . . . [return a request-for-hearing form] to the clerk of the district court within five days after service upon him or her. Upon receipt of the request for a show-cause hearing, the court shall immediately schedule a show-cause hearing to be held within thirty days after the receipt of the request for a show-cause hearing and shall notify the petitioner and respondent of the hearing date.

the term, upon the same grounds, upon a motion filed within six months after the entry of the judgment or order.

(2) The power of a district court under its equity jurisdiction to set aside a judgment or an order as an equitable remedy is not limited by this section.

Olvey relies on *Buda v. Humble*, 517 N.W.2d 622 (Neb. Ct. App. 1994), for the proposition that the state district court's general power to address the merits of its previous orders does not apply to protection orders. Olvey asserts that after a protection order is issued, "no further action [is] authorized under the Protection from Domestic Abuse Act or the order entered by the court." *Id.* at 624. We do not agree with Olvey's interpretation of *Buda*. The issue in *Buda* was whether a protection order was appealable as a final order. The court held that the protection order was a final order for appeal purposes because no further action was required under the Protection from Domestic Abuse Act, or under the order itself, for the order to take effect. *Buda* did not hold that orders under the Protection from Domestic Abuse Act are somehow exempt from Nebraska courts' general equitable and statutory authority to vacate or modify injunctive orders. In fact, because Olvey did not request a hearing within five days of service of the protection order on him, it was this general power that allowed the state district court to grant Olvey's request for a hearing and modify the protection order as Olvey requested. Because Olvey had the opportunity to address the merits of the protection order at a hearing, the requirements of § 922(g)(8)(A) are satisfied.

Olvey next contends that he is entitled to a hearing to determine whether Meadows's affidavit was intentionally or recklessly misleading. In paragraph 4(f) of his affidavit, Meadows characterized the journal entry as a "final order." Olvey asserts that this is a false statement made intentionally or recklessly that misled the magistrate judge into assuming the March 9 hearing was a full hearing on the merits of the protection order.

In order to prevail on a challenge to a search warrant affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978), "a defendant must show: (1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit, and (2) that the affidavit's remaining content is insufficient to establish probable cause." *United States v. Milton*, 153 F.3d 891, 896 (8th Cir. 1998) (citation omitted). Even if Olvey's assertion is accepted as true, Olvey fails to show that the affidavit's remaining content was insufficient to establish probable cause. As the magistrate judge noted, Meadows's characterization of the journal entry was irrelevant to the probable cause determination because copies of the protection order and journal entry were attached to the affidavit. Therefore, the magistrate judge was able to conduct his own analysis of the March 10 modification and make his own determination as to whether it satisfied the standards of § 922(g)(8). Because the warrant application would have supported the magistrate judge's finding of probable cause regardless of the challenged statement, Olvey did not merit a *Franks* hearing.

Finally, we note that even if the magistrate judge had erred in this case, the good-faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984), would apply. Under *Leon*, the Fourth Amendment exclusionary rule does not exclude evidence obtained by officers who reasonably rely on a neutral magistrate judge's probable cause determination, even if the search warrant is ultimately found to be invalid. *United States v. Hessman*, 369 F.3d 1016, 1020 (8th Cir. 2004). In this case, law enforcement relied in good faith on the magistrate judge's legal determination that the protection order as modified by the journal entry met the criteria of § 922(g)(8).

## III.   CONCLUSION

We conclude that the district court did not err in denying Olvey's motion to suppress. Therefore, we affirm the judgment of the district court.

_____