UNITED STATES of America,
Plaintiff,

v.

Kerwin Lamont SUMMAGE,
Defendant.

No. 3:05–CR–00576.

United States District Court,
S.D. Iowa.

April 5, 2006.

Kevin Ray Cmelik, Federal Public Defender, Davenport, IA, Cory Goldensoph, Cedar Rapids, IA, for Kerwin Lamont Summage (1), Defendant.

Clifford R Cronk, U S Attorney's Office, Rock Island, IL, for USA, Plaintiff.

## ORDER ON MOTION TO SUPPRESS

PRATT, District Judge.

Before the Court is Defendant Kerwin Lamont Summage's Motion to Suppress (Clerk's Nos. 22 and 24). The Government responded (Clerk's No. 28). A hearing on the matter was held on January 30, 2006. Subsequently, on February 22, 2006, the Court granted Defendant's motion for new counsel (Clerk's No. 41). Newly substituted counsel, at the Court's request, filed a supplement brief (Clerk's No. 46) in support of the Defendant's suppression motion. The Defendant argues that, under the Fourth Amendment, the evidence seized pursuant to the search warrant in this case should be suppressed because the Warrant Application did not provide probable cause and the Warrant itself lacked particularity. The Defendant

also contends that the federal good faith exception to the exclusionary rule does not apply in this case.[1] The matter is fully submitted.

## I. BACKGROUND

On July 15, 2004, Detective Brandon Noonan ("Det.Noonan") of the Davenport, Iowa, Police Department presented the Warrant Application in this case to an Iowa district court judge requesting that authorities be allowed to search for and seize certain items believed to be in the Defendant's home. Warrant Application (Def.'s Ex. A). The Warrant Application was signed by an assistant county attorney for Scott County, Iowa. *Id.* at 2. Attached to the Application was the sole, sworn Affidavit signed by Det. Noonan and the district court judge. *Id.* at 2–3. No other attached investigative or police reports accompanied the Application. A police officer for the past six years, Det. Noonan has spent the last year assigned as a detective. *Id.* at 3. The Affidavit begins with a boiler plate sentence: "Your affiant conducted an investigation and received information from fellow officers and other sources . . . ." *Id.* The entirety of Det. Noonan's typed, sworn statement is as follows:

Kerwin Summage, the renter of the apartment at 1825 W 40th St # 7 did make video recordings of a mentally handicapped male having sex with a female. Summage offered the victim money to have sex with this unknown female. Summage picked up the victim at his residence. He then took the vic-

tim to the residence he was staying at on 13th St, at the time of the incident. Summage did this with the intent to have the victim have a sexual encounter with a female so he could video tape it. Since the incident has happened Summage has been kicked out of the residence he was staying at on 13th St and is currently living at the address on W 40th St. Detectives were able to confirm that Kerwin is renting this apartment through the utility company and relitives (sic)[.]

When Kerwin and the victim arrived at his apartment, he offered the victim who has a mental handicap money to have sex .with a female. The female was in his bedroom, naked, waiting for Kerwin and the victim to arrive. The female then undressed the victim and performed oral sex upon the victim as Summage video taped the encounter. The victim also reports that Summage has taken photographs of the (sic) him. It is believed that Summage is currently in possession of these items.

*Id.* After these paragraphs and preceded by Det. Noonan's signed initials, a single, hand-written sentence appears: "The alleged victim is in his mid to late 20's." *Id.* At hearing, the Court learned that the district judge wrote the sentence after asking Det. Noonan the alleged victim's age. Hr'g Tr. at 48. The district judge also inquired about the time frame in which the events described in the Affidavit took place, but did not memorialize that conversation in writing on the Affidavit or else-

---

**1.** The Defendant's accompanying allegation that Det. Noonan or the Scott County Attorney's office intentionally or recklessly supplied misleading information in the warrant application is without merit. There is no evidence that misconduct by state officials in this case occurred—mere allegations are not sufficient to entitle Defendant to a *Franks* hearing. *See United States v. Moore*, 129 F.3d 989, 992 (8th Cir.1997) (requiring a defendant

"make a 'substantial preliminary showing' of a false or reckless statement or omission and must further show that the alleged false statement or omission was necessary to a finding of probable cause") (quoting and citing *United States v. Fairchild*, 122 F.3d 605, 610 (8th Cir.1997)). Substitute counsel wisely ignored this issue in his thoughtful, supplemental brief in support. Accordingly, Defendant's motion for a *Franks* hearing is denied.

where. Hr'g Tr. at 50. The district judge, at hearing, could not recall Det. Noonan's response to the judge's inquiry about the recency of the events described in the affidavit. *Id.*

The Application was approved and the warrant issued to search the Defendant's residence and seize:

1. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, but not limited to, utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys.

2. All video tapes and DVD's (sic)

3. pronographic (sic) pictures

4. All video and/or digital recording devices and equipment

5. All equipment that is used to develope (sic) and/or upload/download photographs and/or movies

6. computer(s)

Warrant (Def's Ex. A at 5). These items were described on the warrant, as indicated by x-marks before each boilerplate sentence, as:

Property that has been obtained in violation of law.

Property, the possession of which is illegal.

Property used or possessed with the intent to be used as the means of committing a public offense or concealed to prevent and (sic) offense from being discovered.

Property relevant and material as evidence in a criminal prosecution.

*Id.* at 6. The next day, Det. Noonan executed the warrant. Hr'g Tr. at 38. Under the auspices of the warrant, authorities discovered at least two recordings indicating the manufacture and possession of child pornography by the Defendant.[2]

## II. DISCUSSION

### A. *Probable Cause*

▮ The burden rests with the defendant who seeks to suppress evidence seized pursuant to a warrant. *Carter v. U.S.*, 729 F.2d 935, 940 (8th Cir.1984). The federal constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.[3] "The

---

**2.** In order to protect the identity of the minor-aged victims, the Court declines to state the specific nature of evidence seized. Suffice to say, the nature of the offense conduct is deeply disturbing. While a full description of the seized items is possible under a seal, law enforcement officials and the public are better served by an unsealed memorandum and order.

**3.** To the extent the Defendant still holds that this Court is bound by Iowa law in this matter, he is mistaken:

In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

*Elkins v. United States*, 364 U.S. 206, 223–224, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *but see United States v. Moore*, 956 F.2d 843, 846–848 (8th Cir.1992) (limiting the broad language of the *Elkins* doctrine by declining to extend the federal no-knock rule to review conduct of state officers acting under a state warrant). "Whether evidence obtained by state officers and used against a defendant in a federal court was obtained by an unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers." *United States v. Ross*, 713 F.2d 389, 393 n. 7 (8th Cir.1983) (quoting

rights protected by the fourth amendment are 'not mere second-class rights but [those that] belong in the catalog of indispensable freedoms....' " *In re Grand Jury Proceedings,* 716 F.2d 493, 497 n. 5 (8th Cir.1983) (quoting *Brinegar v. United States,* 338 U.S. 160, 180, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting)).

■■■ The Defendant maintains the Affidavit fails to provide a factual basis for the existence of any crime, a time frame for any alleged criminal activity, and a nexus between the alleged criminal activity and the place to be searched, thereby completely undermining reliance on it to establish probable cause. "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made 'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.' " *United States v. Underwood,* 364 F.3d 956, 963 (8th Cir. 2004) (citing *United States v. Gabrio,* 295 F.3d 880, 883 (8th Cir.2002)). " 'The touchstone of the Fourth Amendment is reasonableness.' Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (quoting *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)).

■■■ In the course of reviewing a state court's determination of probable cause, this Court is mindful that "[a] grudging or negative attitude by [a] reviewing court toward [a] warrant is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate ... warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)

*United States v. Montgomery,* 708 F.2d 343,

(explaining that a heightened scrutiny of probable cause might well lead police to resort to warrantless searches through reliance "on consent or some other exception to the Warrant Clause") (internal citations omitted). When applying a totality of the circumstances approach in probable cause determinations, a reviewing court should decide whether an issuing court had a " 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* (reaffirming the standard of review of an issuing magistrate's probable cause determination found in *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) and holding it "better serves the purpose of encouraging recourse to the warrant procedure").

■■■ "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime shall be found in a particular place." *United States v. Maxim,* 55 F.3d 394, 396–397 (8th Cir.1995) (citing *Gates,* 462 U.S. at 238, 103 S.Ct. 2317). Nevertheless, an affiant's mere conclusory statements do not establish a substantial basis for probable cause. Rather, "sufficient information must be presented to the magistrate to allow that official to determine probable cause." *Id.* at 239, 103 S.Ct. 2317 (reminding courts they "must continue to conscientiously review the sufficiency of affidavits on which warrants are issued"). "As the early American decisions both before and immediately after [the adoption of the Fourth Amendment] show, common rumor or report, suspicion, or even strong reason to suspect was not adequate to support a

344 (8th Cir.1983)).

warrant for arrest. And that principle has survived to this day." *Henry v. United States,* 361 U.S. 98, 101, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) (internal quotation omitted).

■■■ Without an evidentiary hearing before the issuing court, "the probable cause determination must be based upon 'only that information which is found within the four corners of the affidavit.' " *United States v. Olvey,* 437 F.3d 804, 807 (8th Cir.2006) (quoting *United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir. 1982)). Judges are free to rely solely on the information contained within the four corners of the affidavit in making a probable cause determination. *Leichtling,* 684 F.2d at 555. This includes the hand-written sentence in this case, amending the Affidavit to include the alleged victim's age. *See Campbell v. State of Minn.,* 553 F.2d 40, 42 (8th Cir.1977) (holding that additional oral statements provided under oath may be considered by magistrate in determining probable cause when the officer-affiant understands he is still under oath and statements refer back to affidavit). A judicial officer may alter, modify, or correct a warrant, especially in the absence of bad faith, deception, or prejudice—neither of which is present here. *United States v. Hang Le–Thy Tran,* 433 F.3d 472, 481 (6th Cir.2006). Accordingly, this Court finds the issuing court did not leave its position of disinterest or otherwise abandon its judicial role by including its own hand-written amendment to the affidavit based on the oral testimony of Det. Noonan, the affiant.

■■ The Court is, at first, struck by the Affidavit's conclusory character. The affiant, Det. Noonan, fleetingly mentioned, near the end of his statement, a source of his information with the phrase, "[t]the victim also reports . . . ." Det. Noonan made no mention of whether the information in the affidavit specifically came from this alleged victim-informer. The victim-informer was not identified, nor did Det. Noonan furnish reasons, established by corroborating facts, why the alleged victim-informer should be counted as reliable even though the standard Warrant Application form contains such a section, Endorsement on Search Warrant Application, set aside just for that purpose.[4] Det. Noonan did describe the alleged victim-informer as "mentally handicapped," but this would tend to make the objective reader even more suspicious about the victim-informer's reliability, not less. Without information about the victim-informer, an issuing court could not reasonably ascertain the veracity and basis of knowledge of the alleged victim-informer or that of Det. Noonan. The only other reference to additional sources of information named in the Affidavit were unnamed detectives who discovered where the Defendant lived based on the information provided by both the utility company and unnamed relatives of either the Defendant or the alleged victim-informer, but these relationships were also not explained. Neither did Det. Noonan personally observe the alleged offense conduct, nor give substantial indication of an independent investigation into the victim-informer's claims.[5]

---

**4.** Among other things, the applying authorities may, in this section, list those persons upon whom they relied for their information, summarize the testimony of the informant(s) in addition to that set forth in the application and accompanying attachments, and supply the issuing court with reasons for their informant's credibility, i.e., the informant has been reliable in the past, or for reasons already stated in the attachment to the application, or for other reasons that may help the magistrate or judge determine credibility.

**5.** This need not have been the case. The hearing and submissions reveal that Det. Noonan had much more information at his disposal that, for whatever reason, was not included in the Affidavit. Det. Noonan learned

What is left is Det. Noonan's bare bones statement that "[i]t is believed that Summage is currently in possession of these items." Warrant Application at 3. A bare bones affidavit is one that merely states the affiant's belief that probable cause existed. *United States v. Williams*, 224 F.3d 530, 533 (6th Cir.2000). "A sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do" is considered "bare bones." *Gates*, 462 U.S. at 239, 103 S.Ct. 2317 (citing *Nathanson v. United States*, 290 U.S. 41, 45, 54 S.Ct. 11, 78 L.Ed. 159 (1933) and adding: "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement."). "An officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate." *Gates*, 462 U.S. at 239, 103 S.Ct. 2317 (citing *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)). So too here, Det. Noonan's statement, without more, leads the Court to conclude that the Affidavit did not reasonably provide sufficient information to substantiate Det. Noonan's belief and, thus, establish probable cause that the Defendant was in possession of a videotape recording depicting illegal acts.

The Warrant Application and Affidavit also did not contain any type of specific language stating what criminal offenses were involved, except to conclude that the items to be seized were obtained and possessed illegally. The absence of particular statutory language within the confines of the affidavit is, of course, not fatal to a probable cause finding. *See United States v. Chrobak*, 289 F.3d 1043, 1045 (8th Cir. 2002) (finding that affiant's descriptions of illegal conduct were not conclusory because they were "almost identical to the language" of the federal child pornography statute). Related to the problems that come with lack of particularity, failure to provide more than generalized allegations also undermines the reasonable determination of probable cause. When no actual

---

about the outlines of the investigation through his supervising sergeant, who assigned him the case. Hr'g Tr. at 30. He knew the victim's name, *id.*, and that he was born on February 16, 1978. *Id.* at 36. This information was contained in Det. Noonan's report. *Id.* at 36. On or about July 12, 2004, the victim came to the police station with his mother and sister to make a statement. *Id.* at 30. Det. Noonan discovered that the Defendant is the victim's cousin. *Id.* at 34. The mother and sister gave information about the victim's reliability, credibility, and mental functioning. *Id.* at 31. In fact, the victim's sister explained to Det. Noonan that her brother was, mentally, a lower functioning individual. *Id.* at 31–32. She also told Det. Noonan where the victim worked, and about his fear of the Defendant. *Id.* at 31. Det. Noonan also learned that the victim worked at a handicapped development center and that his mother and sister looked after his interests. *Id.* at 32. They informed Det. Noo-

nan about the Defendant's criminal history, particularly sex-related charges in Georgia involving children. *Id.* at 32–33. Finally, Det. Noonan learned that the events described in the Affidavit occurred sometime after the victim's birthday in 2004—creating a five-month window of time in which the offense conduct likely occurred. *Id.* at 34. Among other things, Det. Noonan learned details about the offense conduct, such as the victim went to the Defendant's residence under the impression the two would be picking up discarded cans to reclaim deposits. *Id.* He also learned that the Defendant's former residence, the alleged location of the videotape recording, was actually the home of the Defendant's brother. *Id.* at 35. A reasonably trained officer would know that almost every one of these facts were indispensable to providing a full picture to the district judge about the nature of the conduct and reasons that contraband would likely be found at the Defendant's home.

crimes are cited in the Application or Affidavit, the issuing court here was left to discern what possible crimes can be culled from the conclusory statements of the Affidavit. This difficulty is apparent as evinced by the lack of any reference to specific statutory violations in the Warrant order itself. What is certain is that crimes associated with child pornography cannot be implied from the Affidavit. The victim-informer was an adult at the time of his statements to Det. Noonan and no information was provided in the Affidavit that justifies a reasonable conclusion he was a minor at the time of the alleged offense conduct.

6. Iowa law provides:

A person who sells or offers for sale the person's services as a partner in a sex act, or who purchases or offers to purchase such services, commits an aggravated misdemeanor.

Iowa Code § 725.1 (2005).

The Iowa conspiracy statute, in relevant part, states:

1. A person commits conspiracy with another if, with the intent to promote or facilitate the commission of a crime which is an aggravated misdemeanor or felony, the person does either of the following:

a. Agrees with another that they or one or more of them will engage in conduct constituting the crime or an attempt or solicitation to commit the crime.

b. Agrees to aid another in the planning or commission of the crime or of an attempt or solicitation to commit the crime.

Iowa Code § 706.1

7. The Iowa law defining pandering states:

A person who persuades, arranges, coerces, or otherwise causes another, not a minor, to become a prostitute or to return to the practice of prostitution after having abandoned it, or keeps or maintains any premises for the purposes of prostitution or takes a share in the income from such premises knowing the character and content of such income, commits a class "D" felony.

Iowa Code § 725.3(1).

8. It is the implied allegations of pandering or prostitution (or conspiracy to do either) that

For the sake of argument, though already fatally compromised by their conclusory nature, the allegations in the Affidavit could be interpreted to mean that the Defendant solicited the victim-informer to engage in prostitution or engaged in a conspiracy to do so.[6] Pandering is another likely charge.[7] If true, the videotape recording involved would certainly be probative evidence against the Defendant on these charges.[8] This legal conclusion, however, is the most that can be garnered from the assertions set forth in the Affidavit. Nonetheless, the Government also maintains that the Affidavit reasonably provided probable cause to believe that the Defendant committed sexual abuse.[9] As

distinguishes this case from those First Amendment cases requiring that a magistrate first make a neutral determination that "focuses searchingly on the question of obscenity" before a warrant may issue. *See New York v. P.J. Video, Inc.*, 475 U.S. 868, 875 n. 6, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986) (citing *Roaden v. Kentucky*, 413 U.S. 496, 506, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973)). The Warrant Application makes no allegations whatsoever about the illegality of the Defendant's acts—allegedly the manufacture of pornography—based on obscenity, but only to the videotape recording's probative value as evidence of the other illegal acts. *See United States v. Chrobak*, 289 F.3d 1043, 1045 (8th Cir.2002) (distinguishing between search applications requesting to seize obscene materials and search applications requesting to seize evidence depicting the involvement of a minor engaging in explicit sexual conduct). Notwithstanding the required judicial obscenity determination, materials protected by the First Amendment are evaluated "under the same standard of probable cause used to review warrant applications generally." *P.J. Video, Inc.*, 475 U.S. at 875, 106 S.Ct. 1610.

9. Iowa law provides that:

A person commits sexual abuse in the third degree when the person performs a sex act under any of the following circumstances: ... [t]he act is between persons who are not at the time cohabitating as husband and wife and if any of the following are true: ... [t]he other person is suffering from a

mentioned already, however, the Affidavit gave the district judge no independent basis for concluding anything about the victim-informer's mental state except Det. Noonan's own conclusion that the victim-informer was mentally handicapped. The Affidavit does not even include a stock paragraph describing Det. Noonan's expertise or knowledge in psychology or in the investigation of sex crimes, generally, to give weight to his assessments. *See United States v. Soussi,* 29 F.3d 565, 569 (10th Cir.1994) ("The affiant's experience and expertise may be considered in the magistrate judge's calculus."). An essential element of the type of sexual assault related here was that the victim lacked the capacity to consent. There was no corroborating evidence provided in the Affidavit or otherwise attached to the Application that suggested the alleged victim in this case lacked such capacity. The existence of a possibility that sexual abuse in the third degree may have occurred does not rise to the level of probable cause.

▇▇▇ The Affidavit also contained no time frame in which the implied offense conduct occurred. Again, this is not fatal to a probable cause finding: "Whether the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling,* 992 F.2d 817, 822 (8th Cir.1993) (citing *United States v. McCall,* 740 F.2d 1331, 1336 (4th Cir.1984)). "Time factors must be examined in the context of a specific case and the nature of the crime under investigation." *Koelling,* 992 F.2d at 822 (finding a nine-day time period between discovery of pornographic photos of

a teenage boy and the warrant application "insignificant"). In *Andresen v. Maryland,* for example, a three-month delay between document creation and the subsequent searches was countenanced because the documents were records kept in the ordinary course of business and, as such, could reasonably be expected to be retained in the place to be searched. 427 U.S. 463, 478 n. 9, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). In *Chrobak,* the Eighth Circuit Court of Appeals found that information three months old was not stale given the agent's *stated* knowledge that child pornographers typically retain their pornography for long periods. 289 F.3d at 1046. In the case of firearm possession, the passage of the relevant time period could be decades. *Maxim,* 55 F.3d at 397.

Here, the time frame is completely ambiguous. In the cases mentioned above, at least a time frame was established against which other factors could be considered. Here, there was no approximate date given for the offense conduct. The problem with the Warrant Application and supporting Affidavit is not so much staleness as it is vagueness. As mentioned earlier, the issuing court did ask Det. Noonan, the affiant, about the timing of the events contained in the Affidavit, but the judge did not write down the response. Hr'g Tr. at 50. The Affidavit alleged that, at some point in time, a videotape recording was made by the Defendant of the victim-informer at an address other than the Defendant's current address. There is no mention of when the Defendant lived at his previous address, only that he had been "kicked out" some time ago. In sum, the Affidavit sets forth that, at some undetermined time, evidence of a single criminal act—either prostitution, pandering, or conspiracy—existed in the form of a videotape

---

mental defect or incapacity which precludes giving consent.

Iowa Code § 709.4.

recording. It is possible that the videotape, the age of which is unknown, followed the Defendant from place to place, but it is also possible the videotape was misplaced, broken, or simply taped over again. There is no indication in the Affidavit otherwise.[10] Again, without being able to ascertain the veracity and reliability of Det. Noonan's information, the problem of timeliness becomes even more acute. Without more, the undated information relating the specifics of the assertions of criminal conduct is simply too vague to be a trustworthy basis for probable cause.

 A warrant application must also provide "evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez,* 217 F.3d 547, 550 (8th Cir.2000). Here, the nexus between the offense conduct can only be established by an independent showing that Det. Noonan's sources were reliable and that the information was still fresh. The inability to assess the reliability or the staleness of the Affidavit's information undermine the reasonable conclusion that a videotape documenting evidence of prostitution or pandering existed at the Defendant's residence. The Government's position is further weakened by the Affidavit's own conclusion that the offense conduct occurred elsewhere. As such, the Affidavit fails to show the requisite nexus between the videotape recording and the Defendant's home.

### B. *Particularity*

 In addition to the probable cause requirement, the Fourth Amendment prohibits general warrants through its guarantee against unreasonable searches. *In re Grand Jury Proceedings,*

716 F.2d at 497. "A search warrant must state with sufficient particularity the property to be seized." *United States v. Henderson,* 416 F.3d 686, 695 (8th Cir. 2005). If not, it is unconstitutional. For the reasons set forth below, the Court finds that, in addition to lacking in probable cause, the warrant in this case is overbroad.

 " 'The problem (posed by the general warrant) is not that of intrusion Per se, but of a general, exploratory rummaging in a person's belongings.... (The Fourth Amendment addresses the problem) by requiring a 'particular description' of the things to be seized." ' *Andresen,* 427 U.S. at 480, 96 S.Ct. 2737 (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). This requirement " 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " *Andresen,* 427 U.S. at 480, 96 S.Ct. 2737 (quoting *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965)). In *United States v. Horn,* the Eighth Circuit explained:

To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized. *United States v. Strand,* 761 F.2d 449, 453 (8th Cir.1985). The degree of specificity required will depend on the circumstances of the case and on the type of items involved. *Id.* A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the

---

10. Again, child pornography is another matter. It is well established that child pornographers are collectors of recorded visual materials for long periods time. *See Koelling,* 992 F.2d at 823 (citing *United States v. Rabe,* 848 F.2d 994, 997 (9th Cir.1988)).

time that the warrant is issued. *United States v. Johnson*, 541 F.2d 1311, 1314 (8th Cir.1976).

187 F.3d 781, 788 (8th Cir.1999).

Here, without reference to a specific crime or crimes, except that culled by the executing officer by inference from the Affidavit, the Warrant allowed the search for and seizure of all video tapes, DVDs, pornographic pictures, video and digital recording devices and equipment, and all equipment used to develop, upload, or download photographs and movies—as well as indicia of occupancy in the Defendant's home. Warrant at 1. In *In Re Grand Jury*, the Eighth Circuit ruled a warrant excessive and unreasonable when it ordered the seizure of all records related to a bail bonds business when it did not confine the search to limited types of documents for specific crimes. 716 F.2d at 497–498. In *Rickert v. Sweeney*, the Circuit Court ruled that mere recitations of general conspiracy and tax evasion statutes were not sufficient to provide adequate limitations on the search. 813 F.2d 907, 909 (8th Cir.1987). In *United States v. Dockter*, however, the Circuit Court held that a warrant was not too broad when it, in contrast to the warrants in *In Re Grand Jury* and *Rickert*, supplied the executing officers with several specific statutes, including 18 U.S.C. § 922, and "named the particular type of crimes the defendant was suspected of committing." 58 F.3d 1284, 1289 (8th Cir.1995), *cert denied*, *Shulze v. United States*, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996).

Here, no specific crimes were alleged against the Defendant, much less specific statutes, that would have substantially limited the search. *See Koelling*, 992 F.2d at 821 (approving a warrant "which quoted the statute [and was] explicit about what the sexual conduct depicted in the contraband must involve"). Instead, the executing legal authorities were given free reign to rummage about in the Defendant's home and simply take every piece of electronic equipment and property related to the storing of recorded or photographed images, pornographic or otherwise, they thought were obtained or possessed illegally. The Warrant order made no mention of the specific videotape recording or the offense conduct alleged in the Affidavit. In *Horn*, the Eighth Circuit upheld a warrant as sufficiently specific, but only because it connected or related the generalized laundry list of "any and all envelopes, letters, records, documents, correspondence, videotapes, published material and other objects" to specific conduct described in the application, to wit, "contact with an unidentified woman in Texas who has two daughters 7 and 12 years of age and a son 10 years of age." 187 F.3d at 787–788. The Circuit Court had no trouble with the warrant's listing of specific items to show access to the residence being searched. *Id.* at 788. The rest of the list (envelopes, letters, etc.), however, it characterized as general but rescued from constitutional violation because "the executing officers were limited in their search by the fact the objects seized had to be identifiably related to a woman in Texas with two girls and a boy, either by referring to the woman in some specific way, by depicting her and her children, or at the very least by bearing a Texas address together with a woman's name or in a woman's handwriting." *Id.* Likewise, in this case, the items to be seized showing indicia of occupancy are sufficiently particularized to be constitutional. What is missing, however, is that the laundry list of the other items—video tapes, DVDs, pornographic pictures, video and digital recording devices and equipment, and all equipment used to develop, upload, or download photographs and movies—are not connected to the alleged victim or the conduct set forth in the Affidavit or to any

particular crime. Accordingly, the Court must conclude that the Warrant in this case violated the Fourth Amendment's guarantee against unreasonableness because it lacked sufficient particularity to limit the executing officers' search.

## C. *Good Faith*

■■■■ Suppression of evidence gained pursuant to an invalid warrant is not automatic under federal law when "the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *United States v. Leon,* 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The deterrent effect of the exclusionary rule is only realized when police "have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right.... Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force." *Id.* at 919, 104 S.Ct. 3405. "This is particularly true ... when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920, 104 S.Ct. 3405.

■■■ "The good-faith exception does not, however, create a blanket exemption against suppression whenever police officers search pursuant to a warrant." *United States v. Scroggins,* 361 F.3d 1075, 1083 (8th Cir.2004) (citing *Leon,* 468 U.S. at 922, 104 S.Ct. 3405). The *Scroggins* Court aptly summarizes the *Leon* circumstances where the good-faith exception does not apply:

> First, the affiant may knowingly or recklessly mislead the warrant-issuing judge. *Leon,* 468 U.S. at 923, 104 S.Ct. 3405. Second, the judicial officer may wholly abandon his judicial role, essentially becoming a police officer in a robe. *Id.* Third, the affidavit supporting the warrant may be so deficient "as to render official belief in its existence entirely

unreasonable." *Id.* (quotation omitted). And fourth, the warrant may be so facially deficient that no reasonable executing officer could presume it to be valid. *Id.*

*Scroggins,* 361 F.3d at 1083–1084. There is no need to analyze each of these circumstances as they may or may not apply in this case because only the third circumstance listed above—that the Affidavit supporting the warrant may be so deficient as to render official belief in the existence of probable cause entirely unreasonable—is at play here. Again, the analysis is a purely objective one; the fact that an assistant county attorney, the affiant and executing officer, the affiant's supervisor, and the district judge all personally believed the Affidavit established probable cause is of no consequence. The Eighth Circuit made this abundantly clear in *United States v. Sager:*

> Although courts and lawyers have for some time discussed the proposed "good faith" exception to the exclusionary rule, and although *Leon* is said, in some short-hand descriptions, to have adopted this exception, that is not at all what the Supreme Court has done. The Court, in fact, has been at pains to explain that it is objective reasonableness, not subjective good faith, that is important. "We emphasize that the standard of reasonableness we adopt is an objective one." *Leon,* 104 S.Ct. at 3420 n. 20. "[W]e also eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant...."

743 F.2d 1261, 1265 (8th Cir.1984). Rather, a reviewing court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (citing *Leon,* 468 U.S. at 922

n. 23, 104 S.Ct. 3405). The Seventh Circuit Court of Appeals helps discern the meaning of "well trained": "Police officers in effecting searches are charged with knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles." *United States v. Brown*, 832 F.2d 991, 995 (7th Cir.1987) (citing *United States v. Savoca*, 761 F.2d 292 (6th Cir. 1985)).

■ The Court has already recited the reasons why the issuing court could not reasonably find that the Affidavit in this case supported a finding of probable cause. The special circumstance in this case, however, is that the affiant was also the executing officer with profound knowledge of material facts learned three days before the Warrant Application was brought before the district judge. In some circumstances, an executing officer's knowledge that is not contained in the affidavit may still provide a basis for the good faith exception. *United States v. Marion*, 238 F.3d 965, 969 (8th Cir.2001) ("When assessing the objective [reasonableness] of police officers executing a warrant, we 'must look to the totality of the circumstances,' including any information known to the officers but not presented to the issuing judge.") (quoting from *United States v. Simpkins*, 914 F.2d 1054, 1057 (8th Cir.1990)). The totality of the circumstances standard does not allow this Court to consider Det. Noonan's personal subjective belief, in violation of *Leon*, but does allow this Court to consider Det. Noonan's subjective knowledge about facts not contained in the Affidavit to determine whether he could rely with objective reasonableness on the Warrant.

In *Marion*, a drug distribution case, the affiant, an experienced narcotics officer, did not include in his affidavit that he personally saw the defendant make two or three stops after leaving his hotel room, which is consistent with drug distribution. *Marion*, 238 F.3d at 969. He also failed to include that he and another officer, also an experienced narcotics investigator, found cocaine inside a beer can in a greater amount than was consistent with mere personal use. *Id.* The Circuit Court affirmed the district court by holding that the officer could rely in objective good faith on the warrant, even if the warrant application and attachments—including the officer's affidavit—did not establish probable cause because the officer's subjective knowledge "*plus the information in the affidavit* ... was sufficient to show the executing officers' reliance on the issuing judge's determination of probable cause ... was objectively reasonable." *Id.* (emphasis added). What distinguishes *Marion* from the present case is the amount and quality of information contained in the warrant application and known by the issuing judge. The issuing judge, in *Marion*, in contrast with the present case, knew about information from an anonymous telephone tipster, "which was corroborated in part by police investigation, that [the defendant] was staying in the motel room and that he had left Lincoln to pick up crack cocaine in Omaha, and that crack cocaine had been found in the Bronco." *Id.*

·The circumstances in *Leon* are also instructive. There, the federal district court partially granted the motions to suppress because the relevant affidavit did not establish the reliability and credibility of an informant. *Leon*, 468 U.S. at 904 n. 2, 104 S.Ct. 3405. Nevertheless, the executing officers conducted their search in reasonable good faith because the "application for a warrant clearly was supported by much more than a 'bare bones' affidavit." The affidavit related the results of an extensive investigation, and ... provided evidence "sufficient to create disagreement among thoughtful and competent judges as to the

existence of probable cause." *Id.* at 926, 104 S.Ct. 3405. The *Leon* Court considered the district judge's conclusion that the officer in question "obviously laid a meticulous trail." *Id.* at 904 n. 4, 104 S.Ct. 3405.

In a case similar to *Leon* and *Marion,* in an unpublished *per curiam* decision, *United States v. Holt,* the Eighth Circuit ruled that even though the warrant application affidavit did not provide sufficient details to determine a confidential informant's ("CI") information, the fact that the executing officer knew the CI was reliable—as proved through testimony at the suppression hearing—at the time of search made his reliance on the warrant objectively reasonable. 132 Fed.Appx. 79, 81 (8th Cir.2005). The *Holt* warrant application and affidavit, however, is again distinguished from this case by its inclusion of independent, corroborative facts and personal observations made by the affiant officer. Also, in contrast to the present case, the issue in *Holt* was the single, specific question of the CI's reliability, while the affidavit here was substantially flawed in several ways. In *United States v. Hallam,* the Eighth Circuit again allowed information known to the affiant about a confidential informant—but not included in the warrant application affidavit—to justify an objectively reasonable reliance upon the affidavit, which itself contained fresh, recent, personal observations by the affiant including the precise location of methamphetamine at the property to be searched. 407 F.3d 942, 945–946 (8th Cir.2005).

*Leon, Marion, Holt* and *Hallam* each involved warrant application materials that lacked some key component to properly establish probable cause. In each case, however, officers could rely in good faith on the decision of the issuing court because the officers had previously provided the magistrate or judge with a substantial amount of factual, reliable information.

Here, Det. Noonan, as the executing officer, subjectively knew a broad range of material information gained through his investigation. That fact, however, considered under the totality of the circumstances, cannot redeem the utter lack of factual information contained in the Affidavit. To find good faith based on the affiant's knowledge where, as here, the Warrant Application is so clearly insufficient, would effectively undermine the requirement of the Fourth Amendment that an impartial judicial officer make a neutral determination of probable cause. If otherwise, then investigating officers could easily side step the Fourth Amendment by simply making sure the affiant is also the executing officer. Accordingly, for the reasons already set forth as to probable cause and the overly-broad nature of the warrant, the Court finds that a reasonably-well trained police officer could not have relied upon the warrant issued in this case to search for and seize the items in the Defendant's home.

## III. CONCLUSION

For the reasons set forth herein, the Defendant's Motion to Suppress (Clerk's Nos. 22 and 24) is GRANTED. The items seized by authorities pursuant to the Iowa state warrant in this case are hereby excluded, and inadmissible against the Defendant at trial.

IT IS SO ORDERED.